## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

DESERIE MICHEL, on behalf of herself and all
others similarly situated,

                        Plaintiff,

        -against-

PETCO ANIMAL SUPPLIES STORES, INC., and
PETCO HOLDINGS, INC.

                      Defendants.

Case No. 1:16-cv-01838

**ORAL ARGUMENT REQUESTED**

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## TO STAY OR TRANSFER THE ACTION

**KLAFTER OLSEN & LESSER LLP**
Seth R. Lesser
Fran L. Rudich
Jason Conway
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
Facsimile: (914) 934-9220

**HEPWORTH, GERSHBAUM & ROTH, PLLC**
Marc S. Hepworth
Charles Gershbaum
David A. Roth
Rebecca S. Predovan
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    ARGUMENT ....................................................................................................... 3

      A.      The First-Filed Rule Does Not Apply Because *Kellgren* Involves
           Different Parties and Different Claims .................................................... 3

      B.      The First-Filed Rule Does Not Apply Because *Kellgren* Involves
           A Different Time Period and Will Soon Be Trial Ready ....................... 8

      C.      Defendants Have Failed to Meet their Heavy Burden Under
           28 U.S.C. § 1404(a) ............................................................................... 15

      D.      Petco's Alternative Request for Stay Would Unfairly Prejudice
           Plaintiff .................................................................................................. 17

IV.     CONCLUSION .................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Acosta v. JPMorgan Chase & Co.*, 219 F. App'x 83 (2d Cir. 2007) ........................................... 16

*Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233 (D. Conn. 2003) ...................................... 4

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*,
     474 F. Supp. 2d 474 (S.D.N.Y. 2007) ............................................................................. 17

*Buckalew v. Celanese, Ltd.*, Civil Action No. G-05-315,
     2005 U.S. Dist. LEXIS 48527 (S.D. Tex. Sept. 16, 2005) ................................................. 8

*Bukhari v. Deloitte & Touche LLP*, No. 12-cv-4290,
     2012 U.S. Dist. LEXIS 167315 (S.D.N.Y.Nov. 26, 2012) ................................................ 4

*Consol. Edison Co. of N.Y. v. United States*, 30 F. Supp.2d 385 (S.D.N.Y. 1998) ..................... 17

*Constellation Leasing, L.L.C. v. Oxford Aviation, Inc.*, No. 08-CV-6558,
     2010 U.S. Dist. LEXIS 30212 (W.D.N.Y. Mar. 29, 2010) ................................................ 4

*Castillo v. Taco Bell of Am., L.L.C.*, 960 F. Supp. 2d 401 (E.D.N.Y. 2013) ........................ 13, 14

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000) .............................................................. 4, 5

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ................................................... 4, 15

*Devries v. Morgan Stanley*, Case No. 9:12-cv-81223-KAM (S.D. Fla.) .............................. 12, 13

*Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181 (E.D.N.Y. 2003) .................................. 15

*First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) .............................. 4, 14

*Fischer v. Rite Aid Corp.*, Civil Action No. No.: RDB-09-1909,
     2010 U.S. Dist. LEXIS 56383 (D. Md. June 8, 2010) ..................................................... 14

*GTFM Inc. v. Park*, 02-Civ-7020, 2002 WL 31890940 (S.D.N.Y.Dec. 30, 2002) ..................... 17

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ........................................................................ 16

*HD Brous & Co., Inc. v. Synthesys Secure Techs.*, 229 F. Supp.2d 191 (E.D.N.Y. 2002) .......... 16

*In re Cuyahoga Equip. Corp.*, 980 F.2d 110 (2d Cir. 1992) ......................................................... 4

*Indergit v. Rite Aid Corp.*, 08 Civ. 9361-JPO-HBP (S.D.N.Y.) ................................................. 14

*Kroll v. Lieberman*, 244 F. Supp.2d 100 (E.D.N.Y. 2003) ........................................................ 15

*Mazzantini v. Rite Aid Corp.*, 829 F. Supp.2d 9 (D. Mass. 2011) ................................................ 14

*Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp.2d 325 (E.D.N.Y. 2006) ............................. 16

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010) ...................................................................................... 4, 7, 15

*Pippins v. KPMG L.L.P.*, No. 11 Civ. 0377 (CM),
    2011 U.S. Dist. LEXIS 30678 (S.D.N.Y. Mar. 21, 2011) ................................................. 5

*Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. 2011) ............... 9

*Sana Zara Bukhari v. Deloitte & Touche L.L.P.*, No. 12 Civ. 4290 (PAE),
    2012 U.S. Dist. LEXIS 167315 (S.D.N.Y. Nov. 26, 2012) ............................................... 5

*Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978) ................................................................ 15

*Thomas v. Apple-Metro, Inc.*, No. 14-CV-4120 (VEC),
    2015 U.S. Dist. LEXIS 14574 (S.D.N.Y. Feb. 5, 2015) ................................................. 14

*Wilkie v. Gentiva Health Servs.*, No. CIV. NO. 10-1451 FCD/GGH,
    2010 U.S. Dist. LEXIS 97212 (E.D. Cal. Sept. 16, 2010) ........................................... 5, 7

*Zajonc v. Morgan Stanley*, Case No. 4:14-cv-05563-EMC (N.D. Cal.) ................................ 12, 13

*Zirkel v. Rite Aid Corp.*, Case No. 3:10-cv-00237-KI (D. Ore.) .................................................. 14

## Codes, Statutes and Other Authorities

28 U.S.C. § 1404(a) ............................................................................................................... 15, 17

29 U.S.C. § 655(a) ...................................................................................................................... 6

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

Fed. R. Civ. P. 26(f) .................................................................................................................... 2

Fed. R. Civ. P. 30(b)(6) ............................................................................................................. 10

Fed. R. Civ. P. 72 ...................................................................................................................... 11

New York Labor Law, Art. 19 § 198(3) ...................................................................................... 6

New York Labor Law, Art. 19 § 663 .............................................................................. 6

New York Labor Law, Art. 19 § 650 .............................................................................. 2

Plaintiff Deserie Michel ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to Defendants Petco Animal Supplies Stores, Inc. and Petco Holdings, Inc. ("Petco" or "Defendants") Motion to Dismiss or, in the Alternative, to Stay or Transfer the Action ("Def. Br.").

I.     **INTRODUCTION**

Under the guise of the first-filed rule, Defendants ask the Court to dismiss or, in the alternative, to transfer this essentially just-beginning action – that is a New York case involving a putative Rule 23 class that will only contain New Yorkers asserting only New York law claims – to the Southern District of California where *Kellgren v. Petco Animal Supplies, Inc*., 13-cv-00644-L-KSC ("*Kellgren*") is pending.  While, obviously, there is overlap between *Kellgren* and this case as to the work done by Petco's Assistant Store Managers ("ASMs"), the California case (1) is substantially well-advanced after three and a half years of litigation; (2) has a discovery cut-off this coming February; (3) is an "opt-in" Fair Labor Standards Act ("FLSA") collective action; (4) is nationwide in scope and would have but a few witnesses (if any) from New York; (5) does not assert any New York-specific statutory claims; and, as raised by the Court at the pre-argument conference (6) is limited in temporal scope such that the claims in this case cover a time frame that extends back before *Kellgren* by almost two years.

No case has ever applied the first-file doctrine in anything close to such an instance, and, undoubtedly, for good reason: there may be overlap in claims but the further trajectory of both this case and *Kellgren* will effectively be completely different.  This is a New York case and deserves to be adjudicated as such; to the extent the cases overlap as to discovery there will be no added burden as Petco claims because, of course, the discovery taken in the *Kellgren* action will not be duplicated here.  Indeed, while Petco claims this case would increase the burden on it,

1

most likely, what Petco really means is that it hopes if this New York Rule 23 case were ever tried and the vast majority of witnesses in the case had to fly to San Diego to be heard, the burden on *plaintiffs* would be increased so that they would be disinclined to pursue the case. That, obviously, is not a basis for a first-filed transfer; rather, it strongly cuts against it.

Accordingly, Defendants have not met (and cannot meet) their burden to show that the first-filed rule, a doctrine designed to avoid having two federal courts address the same case or substantially the same case at the same time, applies.

## II.   FACTUAL BACKGROUND

Deserie Michel, a resident of Brooklyn, New York, was employed by Petco as an ASM from approximately September 2013 to February 2015.  Complaint (Dkt. No. 1), ¶ 2.  She worked at Petco's Sheepshead Bay store located in Brooklyn, New York.  *Id.*  Petco classified all ASMs, including Ms. Michel, as exempt from the overtime requirements under New York Labor Law ("NYLL") Article 19 §§ 650 et seq., and supporting New York State Department of Labor Regulations, and did not pay her an overtime premium when she worked in excess of forty hours per week.  *Id.*, ¶¶ 25, 27.  Ms. Michel alleges that she was improperly classified as an exempt employee and is entitled to recover overtime compensation from Defendants.  *Id.*, ¶ 3, 27-28.

Ms. Michel asserts New York state law claims *only* (*id*, ¶¶ 41-53) on behalf of a putative class of ASMs under Federal Rule of Civil Procedure 23 (*id.*, ¶ 16), seeking compensation for overtime work performed by exempt ASMs in New York (*Id.* ¶ 31, 41-45), and Petco's failure to comply with New York's mandatory record keeping requirements.  *Id.* ¶¶ 40, 46-53.  These claims reach back six years from the date of filing (April 15, 2010) and extend forward until such time as certification is granted.  Other than the Complaint and Answer (Dkt. No. 17), no other pleadings have been filed, the parties have not exchanged initial disclosures or participated in a Rule 26(f) conference, and discovery has not started.  By any measure, this case is in its infancy.

On the other hand, *Kellgren* has been actively litigated for nearly three and a half years, with significant discovery and motion practice taking place. *See* Def. Br., at 2-5. *Kellgren* involves an already conditionally certified, nationwide collective action (not Rule 23 class) brought under the FLSA, on behalf of collective action members who worked throughout the country between January 26, 2012 and May 2, 2016. *Id.*, at 3-4. Almost 500 individuals have "opted-in" to *Kellgren* (*id.*, at 4) and the deadline to complete *all* discovery – which the court has emphasized will likely not be enlarged (although it could slip somewhat) – is less than six months away (February 2, 2017). *Id.*, ¶¶ ___. It is anticipated that the parties will need a similar, though likely longer, amount of time for discovery in this case alone; indeed, the normal course of this case, it would be a year before Rule 23 notice would be addressed.

While Ms. Michel received a notice and consent form inviting her to opt-in in *Kellgren* (which she subsequently did on March 31, 2016), the *Kellgren* action is limited to the relief available under the FLSA and does not allege any claims Ms. Michel or any other opt-in may have to recover overtime compensation under the NYLL. The time for amending the pleadings has passed (Manaker Dec., Ex. G, at ¶ 1) and Ms. Michel filed this action to vindicate her rights, and the rights of those similarly situated current or former ASMs at Petco's New York stores, under the NYLL. Thus, it is simply not practicable or feasible for this case, which involves just local, New York claims, to be consolidated with a case in a completely different procedural posture, with no common claims.

III.   **ARGUMENT**

    A.   **The First-Filed Rule Does Not Apply Because *Kellgren* Involves Different Parties and Different Claims**

The first-filed rule does not apply here. This discretionary rule exists to ameliorate the possibility of "identical or substantially similar parties and claims" proceeding in two or more

cases.  *Constellation Leasing, LLC v. Oxford Aviation, Inc*., No. 08-cv-6558, 2010 U.S. Dist. LEXIS 30212, at *7-8 (W.D.N.Y. Mar. 29, 2010) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116-17 (2d Cir.1992)); *see also Alden Corp. v. Eazypower Corp*., 294 F. Supp. 2d 233, 235 (D. Conn. 2003) ("In determining if the first-filed rule applies, the court must carefully consider whether in fact the suits are duplicative.") (citing *Curtis v. Citibank, N.A*., 226 F.3d 133, 136 (2d Cir. 2000)).  As the Second Circuit has consistently held, the first-filed rule applies only "where there are two *competing* lawsuits."  *First City Nat'l Bank & Trust v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (emphasis added) (internal quotes omitted); *accord D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,* 599 F.3d 102, 112 (2d Cir. N.Y. 2010) (first-filed rule applies to "competing lawsuits").  At the same time, the Second Circuit has cautioned that "[a] court must be careful … not to be swayed by a rough resemblance between the two suits ..." *Curtis*, 226 F.3d at 136. Petco alleges that venue should be transferred to the Southern District of California ostensibly because this case nearly completely overlaps with the *Kellgren* action.  This assertion is inaccurate.

    *First*, while the same defendants are parties to both actions at issue, the groups of plaintiffs in the two pending actions are markedly different, a point which is underlined by the Second Circuit's recognition that duplicative lawsuits are those involving the *same* parties and issues. *Curtis*, 226 F.3d at 136.  "The classic context for applying the rule is where mirror-image lawsuits between the same parties are filed in different venues …" *Bukhari v. Deloitte & Touche LLP*, No. 12-cv-4290, 2012 U.S. Dist. LEXIS 167315, at *8 (S.D.N.Y. Nov. 26, 2012).  That is not this case here.  The plaintiffs in *Kellgren* are current or former Petco ASMs from all over the country that have affirmatively chosen to opt-in as FLSA collective action plaintiffs. Apart from Ms. Michel,

only 33 other current or former Petco ASMs employed in Defendants' New York stores have

opted-in as plaintiffs in the *Kellgren* case.  Def. Br., at 4.[1]  By contrast, the class for which Ms.

Michel seeks certification under Rule 23 includes all current and former ASMs employed in New

York (but not anywhere else in the country) since April 14, 2010.  No "opt-in" will be required for

class members to participate in this action, which is estimated to include a few hundred current or

former ASMs that worked in Petco's stores in New York during the applicable six-year limitations

period.[2]  The plaintiff groups, therefore, are distinct and will have virtually no overlap.  *See Wilkie*

*v. Gentiva Health Servs., Inc*., Case No. 10-1451, 2010 U.S. Dist. LEXIS 97212 (E.D. Cal. Sept.

16, 2010) (refusing to transfer under "First-Filed" rules due to insufficient similarity of plaintiff

classes); *cf. Pippins v. KPMG, LLP*, Case No. 11 Civ. 0377, 2011 U.S. Dist. LEXIS 30678, at *8

(S.D.N.Y. March 21, 2011) (finding the plaintiffs in two actions were substantially similarly where

the relevant time period of the first action subsumed the relevant time period of the second action).

Furthermore, the time period for Plaintiff to amend the pleadings in *Kellgren* has expired and the

*Kellgren* court has indicated that the deadline will not be modified "absent a showing of

extraordinary good cause arising from compelling, unforeseen circumstances."  *See Kellgren*, Dkt.

No. 117, at 5.  Defendants' contention, therefore, that Plaintiff could add the claims she asserts

here in *Kellgren* (and pursued it with "little or no discovery") (Def. Br., at 2) is breath-takingly

false and so obviously wrong that its assertion constitutes a telling concession.

> *Second*, the extent of overlap between the two actions is diminished further by the

differences in the legal claims being asserted by the respective plaintiff groups.  *Curtis*, 226 F.3d

at 136.  *Kellgren* involves only FLSA claims, whereas this case involves only New York law

---

[1] Defendants indicate that 469 individuals have opted-in to *Kellgren*.  Def. Br., at 4.  The actual number is 473.

[2] Defendants indicate that the putative Rule 23 includes approximately 195 New York ASMs.  Def. Br., at 11.

overtime claims.  For example, while the FLSA's limitations period is two or three years for "a cause of action arising out of a willful violation," 29 U.S.C. § 655(a), overtime claims under New York law are governed by a six-year statute of limitations.  New York Labor Law, Article 19, §§ 198(3) and 663.  *See* pp. 10-13, below (addressing point).  In addition, Plaintiff alleges Petco failed to comply with New York's mandatory record keeping requirements, claims that are unavailable under the FLSA.  The scope of the litigation in this case is well different from *Kellgren*.  The Rule 23 discovery alone will be substantially different and, indeed, will be a singular core aspect of this lawsuit – discovery that will be New York-centric, involving discovery that will involve New York ASMs, their direct and regional managers and activities at New York stores.[3]  Accordingly, the differences in the scope of protection afforded to employees are substantial and weigh heavily against transferring this New York case to another jurisdiction.[4]

Moreover, although the central issue in this action and *Kellgren* are the same, namely whether ASMs were properly classified as exempt from overtime by Defendants, the factual basis for the claims are distinctly particularly where, as here, Defendants allege their decision to classify New York ASMs was made in good faith and was not willful (and complied with NYLL) and, presumably, was in reliance on information regarding the *actual* job duties of New

---

[3] Additionally, Petco is not bound by and may in fact raise different defenses and arguments than those raised in *Kellgren* to attempt to defeat class certification and liability in this action.  For example, Defendant Petco Holdings, Inc. LLC may argue that its predecessor, Petco Holdings, Inc., employed Plaintiff and the members of the putative Rule 23 class and that it is, therefore, not Plaintiff's employer under the FLSA.  *See* Def. Br., at 10, n. 4 (outlining recent changes to the corporate structure of Defendants).  Accordingly, the cases are dissimilar to the extent that a different Defendant was named in both actions and will require Plaintiff to take additional discovery to determine the relationship between the two.

[4] Petco attempts to conflate, by inference, the similarities between this action and *Kellgren* by indicating that Plaintiff is represented by some of the same counsel in both actions.  *See e.g.*, Def. Br. at 2, 6.  However, whether the same or different counsel are involved in the two proceedings has no bearing on whether the actions involve the same parties and issues and whether the first-filed rule should be applied.

York ASMs.  *See* Defendants' Answer (Dkt. No. 17), at 8 (affirmative defenses 13 and 15).

Notwithstanding the clear factual differences between the two actions, Petco snubs directly relevant and otherwise controlling case law and argues, instead, that Plaintiff commenced this action because she was "dissatisfied with the [*Kellgren*] court's discovery rulings" and "in order to increase the burdens on Petco by increasing its litigation costs and the disruption to the its business."  Def. Br., at 1.  To be clear: the first is 100% false *ipse dixit* and the second is illogical.  Plaintiffs are entirely satisfied with the course of discovery in *Kellgren* (indeed, Plaintiffs just obtained a substantial ruling providing what they had sought) and unless Petco is going to concede in Southern District of California that the Rule 23 class is proper for New York ASMs, the burden of litigating would only be, as stated above, substantially higher on Plaintiffs than Petco (which could really explain the present motion).

Petco appears to fail to appreciate that the first-filed rule does not absolve it of liability for claims in a separate action that are not resolved by the first.  For example, Petco ignores the Second Circuit's decision in *New York Marine & Gen. Ins. Co.*, 599 F.3d at 113, where the court declined to apply the first-filed rule where the resolution of the first case would not resolve all of the claims of the second case.  Petco also ignores *Wilkie*, where the first-filed action had been brought on behalf of a putative nationwide FLSA class, and also included state claims for North Carolina and New York subclasses.  *Id.* at *1 n. 2.  A second-filed action was filed in the Eastern District of California against the same defendant containing the same FLSA claims and included state law claims in the form of a California subclass.  *Id.*  The court declined to transfer the second-filed action, noting that the California class was "separate and distinct from any and all … sub-classes [in the first-filed action]."  *Id.* at *10.   In doing so the court also found that the state claims in the first-filed case did not overlap with the second filed case.  *Id.* at *13.  This

Court should likewise find the same.

**B.      The First-Filed Rule Does Not Apply Because *Kellgren* Involves a Different Time Period and Will Soon Be Trial Ready**

The foregoing provides sufficient grounds to deny Petco's motion.  But there are additional facts to support the conclusion that *Kellgren* and this case are not "competing lawsuits" within the Second Circuit's definition of such parallel cases.  Foremost, the first-filed rule does not apply to two cases with different periods of recovery.  *Buckalew v. Celanese, Ltd.*, 2005 U.S. Dist. LEXIS 48527, at 8 (S.D. Tex. Sept. 16, 2005) (declining to apply the first-filed rule in an FLSA context where the lawsuits involve "different periods of recovery…").  Indeed, no case has, as best as we can tell, ever sought first-filed application where the different periods of recovery are materially distinct.  Here, there is not only a "past gap" with respect to relevant periods between this action and *Kellgren*, there is also a "future gap," as the Rule 23 claims continue beyond the period for the collective claims in *Kellgren*. *Kellgren* involves FLSA opt-ins who joined worked for Petco between January 26, 2012 and May 2, 2016, while this case, should a class be certified, would cover those employees who started work for Petco both *before (and conceivably after)* that time period. The New York claims cover Petco ASMs working in New York from April 14, 2010 to the present.[5]  This broader and distinct period is nearly two years *greater* than the time period covered by the collective in *Kellgren* and, as the Court noted at the pre-motion conference, the two cases at issue ultimately address different time periods.  As such,

---

[5] Defendants state that the ASM position was eliminated as of June 19, 2016 and a new, non-exempt position of Guest Experience Leader was created in its stead.  Def. Br., at 13.  As such, Defendants claim "there will be no "new" putative class members whose claims might accrue after June 19, 2016." *Id.*  However, Defendants do not contend, because it cannot, that there are no ASMs who worked for Defendants through to June 19, 2016 who do not have a valid claim for overtime based on work performed until that date.  As a result, these are new claims that are distinct (and different) from those asserted in *Kellgren*.

they can hardly be deemed to be "competing."[6]

 *First*, the "past gap" reflects a more than 21-month difference between the start of the putative Rule 23 period in this action and the collective action period in *Kellgren*.  Defendants do not dispute, because they cannot, that there is a distinct and identifiable difference between the two time periods covered by the two actions.  Moreover, Defendants do not dispute, again because they cannot, that there is a distinct and identifiable group of ASMs who would be covered by this action and not by *Kellgren*.  Recognizing this, Defendants claim that none of the putative class members whose claims accrued prior to January 26, 2012 asserted any claim against Petco in the ensuing four and a half years but that is a complete irrelevancy.  In fact, in this Circuit, the Court of Appeals has placed great weight on the fact that because a person may not wish individually to join a FLSA collective action, that a state law analog claim can proceed under Rule 23.  *See Shahriar v. Smith and Wollensky Rest. Grp. Inc*., 659 F.3d 234, 244 (2d. Cir. 2011).  Plaintiff's claims and the putative Rule 23 class she seeks to certify will, if granted by the Court, automatically include the ASMs with claims that pre-date the collective in *Kellgren.*  Defendants also, patently incorrectly, state that Plaintiff cannot bring a putative class action on behalf of ASMs who worked at Petco prior to January 26, 2012 or after March 3, 2016, as she did not work during either period.  Def. Br., at 12. Plaintiff is clearly entitled to brings claims on behalf of, and act as class representative for, ASMs who worked during the applicable statutory time period which, in this case, is April 14, 2010 to the present.  Whether Plaintiff worked one-day or one thousand days during the applicable statutory time period is irrelevant and the factors that guide the Court's analysis of whether a class should be certified are those prescribed by Rule

---

[6] Defendants concede that the time periods are different (Def. Br., at 1-2) and, even with the benefit of partial tolling in *Kellgren*, the claims of the collective commenced on January 26, 2012.  Def. Br. at 3-4, n. 2.  **This is more than 21 months after the start of the putative class period here.**

23.

In addition, Plaintiff will need to conduct significant, additional discovery in this action not only because the claims are different, but because the time periods are, also.  For example, Plaintiff will need to conduct discovery of, among other things, Defendants' policies, practices and procedures regarding New York ASMs, Petco's store operations in New York as well as her claim that Defendants failed to maintain accurate records of the hours worked by Plaintiff and the putative Rule 23 class, and failed to provide accurate wage notices and statements.  While Defendants counter that this and Plaintiff's claim for liquidated damages are "derivate of the underlying misclassification claim (Def. Br., at 15), Plaintiff must nonetheless explore these issues as part of this action and conduct relevant discovery in connection with same.

Further, Plaintiff will need to obtain relevant documentary and deposition testimony relevant not only to New York, but to the "past gap" time period.  While Defendants claim to have produced 4,600 documents "covering the period from March 2010 to date" (Def. Br., at 4), the reality is that these documents are not specific to Defendants' New York operations and New York ASMs, and do not include store, district and region-level documents and electronically-stored information for the supervisors with responsibility over Plaintiff's store, which is a necessary and critical part of demonstrating a case involving Petco's New York ASMs.  Moreover, the corporate witnesses and store, district and region-level supervisors over Plaintiff's store have not (and will not) be deposed as part of the *Kellgren* action.  There, the court has permitted the plaintiff to take only 9 depositions during the second phase of discovery, in addition to one Rule 30(b)(6) deposition, and the plaintiff will take little (but more likely, no) discovery pertaining to Petco's New York ASMs.

*Second*, the "future gap" (i.e., the time period between the close of the collective in *Kellgren* and the claims of new putative class members) presents two distinct issues that require discovery above and beyond those issues raised in the *Kellgren* action.  The first is the identification of ASMs who were employed in New York through to June 19, 2016, when the ASM position was eliminated, and whether they were, among other things, subject to the same policies and procedures as other New York ASMs.  The second is discovery as to the policies and procedures, again among other things, that were in effect between the close of the collective in *Kellgren* and the elimination of the ASM position.  While it appears to be the case that no new ASMs will be a part of the putative Rule 23 class post-June 19, 2016, Defendants do not deny that there are no new ASMs and/or new claims for overtime that are not covered by the "future gap."  Again, as with the "past gap," Plaintiff will be required to conduct discovery as to these claims.  While there may be some temporal gap inherent in every application of the first-filed rule where, as here, it is of such magnitude that it will be subsumed by the need to conduct significant, additional discovery, among other things, the first-filed rule should not be employed.

Additionally, as Defendants acknowledge (Def. Br., at 4-5), the parties in *Kellgren* have embarked on significant discovery and motion practice, including six months of initial discovery (directed at conditional certification issues) and, following the court's decision to grant conditional certification of the plaintiff's FLSA claims, have commenced substantial second-stage discovery directed at determining whether the opt-ins are similarly situated for purposes of the FLSA.  *See* Def. Br., at 4.  The *Kellgren* court has also ruled on several discovery disputes and, in ruling on the plaintiff's Rule 72 objections to the operative scheduling order, recently amended same in the manner that *Plaintiffs* desired by limiting written discovery from all the opt-ins to just 25%.  *See* Declaration of Seth R. Lesser ("Lesser Dec."), Exhibit A.  Contrary to

11

Defendants' expectations (Def. Br., at 5), the court did not extend the discovery cut-off or motion filing dates.[7]  Because the parties have completed significant discovery – and that case is sufficiently advanced and fast approaching post-discovery matters – transferring this case to California will only mean that this case will have to proceed all-but independently of *Kellgren* because the *Kellgren* court has indicated that the discovery and motion deadlines (which are less than seven and eight months away, respectively) will not be modified absent a showing of extraordinary good cause arising from compelling, unforeseen circumstances.  *See Kellgren*, Dkt. No. 117, at 5.

As Plaintiff noted in her pre-motion submission, this case is more analogous to what occurred in *Zajonc v. Morgan Stanley*, Case No. 4:14-cv-05563-EMC (N.D. Cal.) and *Devries v. Morgan Stanley*, Case No. 9:12-cv-81223-KAM (S.D. Fla.).  What happened there was that, like here, there was an earlier FLSA collective action pending (in Florida, *Devries*).   Subsequently, the same attorneys (including the undersigned) filed an overlapping California Rule 23 case in California (*Zajonc*).  Morgan Stanley made a first-filed motion in California/*Zajonc*, arguing, as here, that litigating *Zajonc* would "entail a substantial and unnecessary duplication of labor and resources if *Devries* and *Zajonc* were heard by different district judges."  *Zajonc*, Dkt. No. 37. Judge Chen almost summarily rejected that motion.  Lesser Dec., Ex. B (excerpts of hearing before Judge Chen wherein he denied the defendant's motion to dismiss, stay or transfer).

Morgan Stanley then tried to invite transfer the *Devries* judge to welcome the sending of the *Zajonc* action to Florida.  *See* Fuchs Dec., Ex. B (Order denying transfer of the second-filed action to Florida).  The *Devries* court found the chronology of the two cases was very different

---

[7] Defendants' attempt to link any dissatisfaction with and plaintiff's appeal of the discovery order in *Kellgren* with the filing of this action evidences that it is clutching at straws.  Def. Br., at 6.  Defendants' improper pay practices in New York prompted Plaintiff to file the instant action and not, as Defendant's surmise without any foundation at all, her "dissatisf[action] with the court's discovery rulings …"  Def. Br., at 6.

since the California action had only recently been filed, while the Florida action had been

pending for several years, and the California action involved California state law claims brought

under Rule 23.  *Id*., at 5.  In addition, the *Zajonc* court indicated that bringing in new state law

claims will require discovery to be re-opened (effectively what would occur here), and transfer

would result in deleterious and unfair delay.  *Id*., at 5.  While, by the time that the second motion

was filed (that in *Devries*), discovery was within weeks of being completed, the principles are

effectively all the same here and this Court should follow the same path and deny Defendants'

request to transfer – the Complaint in *Kellgren* cannot now be amended to add new state law

claims, and discovery (which will shortly be completed) is focused solely on whether the opt-ins

are similarly situated for purposes of the FLSA.[8]

By contrast, the FLSA cases upon which Petco tries to rely, (*see* Def. Br. at 9-10), are,

not surprisingly, inapposite.  *First*, *Castillo v. Taco Bell of Am., LLC*., 960 F. Supp. 2d 401

(E.D.N.Y. 2013), is almost completely afield (again, the undersigned was counsel in that case).

That case, and the earlier filed *Whittington* case were both FLSA collective actions of the same

scope (nationwide) and effectively the same time frames.  After conditional certification notice

went out *Whittington* and the notice period ended, additional opt-ins appeared that – initially –

Taco Bell refused to agree to let join the earlier case.  Hence, *Castillo* was filed (as is proper with

FLSA collective actions).  After Taco Bell sought to transfer *Castillo* to *Whittington* under the

first-filed rule, plaintiffs pointed out to Taco Bell the circumstances that led to the filing of the

second lawsuit (i.e., its denial to permit the late opt-ins to join the action).  Taco Bell then

reversed course and allowed the *Castillo* plaintiffs to join the first filed case (hence, the court's

---

[8] Defendants claim, without any basis whatsoever, that "the discovery that would be required in Michel has been, or is being, conducted in *Kellgren*."  Def. Br., at 14.  As demonstrated herein, that is simply not the case and Plaintiff will be required to conduct significant, additional discovery in this action directed at her New York-centric claims.

decision to dismiss the lawsuit), which they did.  As such, the court's decision in *Castillo* was based on the two identical FLSA actions sharing the same opt-ins.  That is simply not present here.

*Second*, in *Fischer v. Rite Aid Corp.*, Case No. 09-1909, 2010 U.S. Dist. LEXIS 56383 (D. Md. June 8, 2010) and *Mazzantini v. Rite Aid Corp.*, 829 F. Supp. 2d 9 (D. Mass. 2011), the filing of Rule 23 state class actions was, effectively co-extensive with an earlier-filed FLSA collective action, where discovery was, unlike in *Kellgren*, open-ended and likely to extend for some time – in fact, in that case, it never even got close to being completed.  As a result, the Rule 23 cases were proceeding on the same time-line and their time periods were coextensive with the earlier case, which is almost assuredly not going to happen here.  Noticeably absent from Petco's motion is reference to two other coeval Rule 23 cases against Rite Aid – one in New York (*Indergit v. Rite Aid Corp.*, 08 Civ. 9361-JPO-HBP (S.D.N.Y.)) and another in Oregon (*Zirkel v. Rite Aid Corp.*, Case No. 3:10-cv-00237-KI (D. Ore.)) – where the defendant did not trying to stay or transfer the cases and which proceeded along together with the cases in Pennsylvania (undoubtedly, the undersigned believes, in the case of the New York action, because the statute of limitations in New York was longer than Pennsylvania's).

For these reasons, Defendants are unable to meet their burden under the first-filed rule, and venue should not be transferred to the Southern District of California.[9]

---

[9] The "balance of convenience" exemption to the first-file rule also dictates that this action remain in New York.  As Defendants indicate, the Second Circuit recognizes two exceptions to the first-filed rule.  Def. Br., at 17; *see also First City Nat'l Bank*, 878 F.2d at 79.  As Defendants note, this analysis involves applying the same factors considered in connection with a motion to transfer venue pursuant to 28 U.S.C. § 1404(a).  Def. Br., at 17.  Chief among them are (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the convenience of the parties, and (4) the locus of operative facts.  *Thomas v. Apple-Metro, Inc.*, No. 14-CV-4120, 2015 U.S. Dist. LEXIS 14574, at *7-*8 (S.D.N.Y. Feb. 5, 2015).  For the reasons outlined in Section III.C., Plaintiff has satisfied this exemption and, accordingly, the action must remain in New York.

**C.**     **Defendants Have Failed to Meet their Heavy Burden Under 28 U.S.C. § 1404(a)**

Defendants request, in the alternative, that this case be transferred to the Southern District of California pursuant to 28 U.S.C. § 1404(a).  The federal *forum non conveniens* statute provides, in pertinent part, that "for the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Defendants bear the burden of establishing the propriety of transfer by clear and convincing evidence.  *New York Marine & Gen. Ins. Co.*, 599 F.3d at 114; *Excelsior Designs, Inc. v. Sheres,* 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (citations omitted).

In considering whether to grant a venue transfer, courts in this Circuit engage in a two-part test.  The first question is whether the action "might have been brought" in the proposed transferee forum.  Second, the Court must determine whether the transfer promotes convenience and justice.  *See Neil Bros. Ltd v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006) (citing *Schertenleib v. Traum,* 589 F.2d 1156, 1161 (2d Cir. 1978)).  The criteria that courts utilize to determine whether to transfer an action under Section 1404 include consideration of the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; and (9) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances.  *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006); *Kroll v. Lieberman,* 244 F. Supp. 2d 100, 102 (E.D.N.Y. 2003); *HD Brous & Co., Inc. v. Synthesys Secure Techs., Inc.,* 229 F. Supp. 2d 191, 198

(E.D.N.Y. 2002).[10]

It is clearly more convenient for Plaintiff, and members of the class she seeks to represent, to have this matter heard in New York.  As noted, Plaintiff is a resident of New York, and the putative class members are current or former employees of Petco in New York. The majority of the relevant documents and witnesses relevant to adjudication of the New York claims are located in New York.  In fact, were this case transferred to California, except for a few corporate witnesses, the entirety of the trial in San Diego will entail New York witnesses and evidence from nearly 3,000 miles away (and present significant practical difficulties).  This fact exceedingly heavily weighs in favor of denying Defendants' motion.

While this Court obviously is more familiar with New York law, including New York's overtime compensation laws, a federal court in California cannot claim to have such an advantage. There is a clear local interest in deciding this controversy in New York and the citizens of California have at most a marginal interest in a controversy involving New York citizens, New York law, and claims that arose in New York.  *See, e.g.*, *Acosta v. JPMorgan Chase & Co.*, 219 Fed. Appx. 83, 85 (2d. Cir. 2007); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation … There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case.").

Although this case was filed after the *Kellgren* matter was filed in the Southern District of California, this factor should not make a difference for the reasons explained in Sections III.A and

---

[10] The convenience of the witnesses is "probably the single most important factor in the transfer analysis."  *Neil Bros. Ltd.*, 425 F. Supp. 2d at 329 (citations omitted).

III.B, *supra*.  Despite being a collective action member in *Kellgren*, Ms. Michel's claims are limited to federal FLSA violations and do not assert any violation of New York overtime laws. Since this action is distinct and separate from *Kellgren* as the actions involve, among other things, different laws, different statutes of limitations, different statutory penalties, and different groups of plaintiffs, the case should not be transferred and/or consolidated with *Kellgren*.[11]

Because the balance of factors weighs heavily in favor of this forum, Defendants cannot meet their burden of showing that California is a significantly more inconvenient forum.  Petco's request for transfer of venue under 28 U.S.C. § 1404(a) should be denied.[12]

### D.  Petco's Alternative Request for a Stay Would Unfairly Prejudice Plaintiff

Finally, Petco's alternative request that this Court stay this action (Def. Br. at 24) would prejudice Plaintiff by having her case stalled for an indefinite period of time while the issues in *Kellgren* – which will have little or no application in this action – are resolved.[13]  Contrary to Defendants' assertion, the *Kellgren* court will not be asked to decide whether a class can be

---

[11] An additional factor to consider is the likelihood of conflict between the determinations made in the two actions. Defendants contend that one reason for transferring the case to the Southern District of California is to ensure consistency of judicial rulings, even though the claims in the two cases involve different plaintiff groups and arise under somewhat dissimilar statutes.

[12] Clutching at straws, Defendants contend that equity favors dismissal of this action. Def. Br., at 19.  However, Defendants provide no case law to support its bald assertion that this action may be dismissed because equity so demands it.  While Petco makes considerable noise about the costs of defending against Plaintiff's claims and the potential for inconsistent rulings, it does not deny, nor can it, that this action involves distinctly New York claim's on behalf of a distinct class of New York ASMs and that, among other things, the court will be charged with determining whether to certify a putative class under New York law.  And on these issues, particularly, there is no potential for inconsistent rulings with those made by the court in *Kellgren*.

[13] In deciding whether to stay an action, courts balance "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest …" when determining whether to stay an action.  *Am. S.S. Owners Mut. Prot. & Indem. Ass'n Inc. v. Lafarge N.Am. Inc.*, 474 F. Supp. 2d 474, 482 (S.DN.Y. 2000) (*citing GTFM Inc. v. Park*, 02-Civ-7020, 2002 WL 31890940, *2 (S.D.N.Y. Dec. 30, 2002)).  The principal objective is the "avoidance of unfair prejudice." *Id*. (*citing Consol. Edison Co. of N.Y. v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y.1998)).  The burden is on the movant to "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.*  Defendants have failed to make such a showing here.

certified (Def. Br., at 24), and whether the fact-finder (i.e., the jury) finds that ASM's are exempt or not under the federal FLSA is not dispositive of the question as to whether they are exempt from overtime under New York law.  A stay, therefore, will only serve to hold this action in abeyance, indefinitely, and the underlying issues will not be resolved in *Kellgren*.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that that the Court deny Petco's motion to dismiss or, in the alternative, to stay or transfer this action, in its entirety.

Dated:  August 25, 2016
      Rye Brook, New York

Respectfully,

/s/ Seth R. Lesser
Seth R. Lesser
Fran L. Rudich
Jason Conway
**KLAFTER OLSEN & LESSER LLP**
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
Facsimile: (914) 934-9220
E-mail: seth@klafterolsen.com
      fran@klafterolsen.com
      jason.conway@klafterolsen.com

Marc S. Hepworth
Charles Gershbaum
David A. Roth
Rebecca S. Predovan
**HEPWORTH, GERSHBAUM**
**& ROTH, PLLC**
192 Lexington Avenue, Suite 802
New York, New York 10016
Telephone: (212) 545-1199
Facsimile: (212) 532-3801
E-mail: Mhepworth@hgrlawyers.com
      Cgershbaum@hgrlawyers.com
      Droth@hgrlawyers.com
      Rpredovan@hgrlawyers.com

*Attorneys for Plaintiffs*